BAKER LUMBER CO. v. A. A. CLARK CO. et al. (BOARD-
MAN Intervener).

No. 3234.   Decided Feb. 5, 1919.   (178 Pac. 764.)

1. VENUE—MATERIALMAN'S ACTION AGAINST SCHOOL DISTRICT AND
GENERAL CONTRACTOR—WAIVER.   In materialman's action against
general contractor, school district, and assignee of contractor's claim
against school district under Comp. Laws 1907, section 1400x, as-
signee, by failure to move for change of venue under section 2934,
as amended by Laws 1913, c. 55, or demand that trial be had in
proper county under section 2933, as amended by Laws 1913, c. 93,
waived its right to be tried in the county in which the work was
done.[1]   (Page 342.)

2. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION OF SCHOOL BUILD-
ING—ASSIGNMENTS OF WARRANTS—RIGHTS OF ASSIGNEE.   Where
contractor, having constructed school building, assigns school dis-
trict warrants, the assignee takes warrants subject to same de-
fenses as existed against contractor, and was not entitled to pay-
ment until satisfaction of subcontractor's and materialmen's pre-
ferential right to payment under Comp. Laws 1907, section 1400x.[2]
(Page 346.)

3. BANKRUPTCY—EFFECT OF PROOF OF CLAIM—"SECURED CREDITOR."
Preferential right, under Comp. Laws 1907, section 1400x, of sub-
contractors to moneys due contractor from school district was not
such a secured claim as to be lost, through waiver or election of
remedies, by subcontractors' filing proof of their claims in the
bankrupt estate of the contractor as unsecured debts without re-
serving right of enforcing their claims against any security to which
they were entitled and by receiving two dividends from the bank-
rupt's trustee, where the contractor, prior to his adjudication as
bankrupt, had assigned all amounts coming from the district to a
bank, and had carried the assignment into effect by delivering to
the bank the school district warrants for these amounts; the sub-
contractors not being "secured creditors" at time of adjudication.
(Page 346.)

4. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION OF SCHOOL BUILD-
ING—SUBCONTRACTOR'S CLAIM—ALLOWANCE.   In subcontractor's
action against school district and general contractor under Comp.
Laws 1907, section 1400x, subcontractor's claim for work per-

---

[1] *Emerson-Brantingham Imp. Co.* v. *Giles,* 53 Utah, 539, 174 Pac. 181.

[2] *South High School Dist.* v. *McMillan P. & S. Co.,* 49 Utah, 477; 164
Pac. 1041.

formed after taking over contract originally let to another sub-contractor was probably allowed.   (Page 347.)

5. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION OF SCHOOL-HOUSE—SUBCONTRACTOR'S CLAIM—ALLOWANCE.  In subcontractor's action against school district and general contractor under Comp. Laws 1907, section 1400x, claim for subcontractor for wages paid for work performed for another subcontractor whose contract was subsequently given to plaintiff subcontractor, where general contractor had directed the payment of such wages, was properly allowed.   (Page 347.)

6. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION OF SCHOOL-HOUSE—ACTION AGAINST SCHOOL DISTRICT BY SUBCONTRACTOR—COSTS.  In subcontractor's action against school district and contractor under Comp. Laws 1907, section 1400x, refusal to allow school district costs under section 3339 was not error, where it did not pay money into court, but denied liability, and prayed judgment that subcontractor's complaint and the various cross-complaints filed against it be dismissed.   (Page 348.)

7. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION OF SCHOOL BUILD-ING—INTEREST OF WARRANTS.  In subcontractor's action against school district and general contractor and bank to whom contractor had assigned warrants executed upon acceptance of building, under Comp. Laws 1907, section 1400x, school district should have been required to pay interest at the legal rate under section 1241 on the warrants from the date due until paid.[3]   (Page 350.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Wm. H. Bramel,* Judge.

Action by the Baker Lumber Company against the A. A. Clark Company, the Sevier School District of Sevier County, Utah, the Merchants' Bank, and others, in which Thomas Boardman intervenes.

From judgment rendered, defendant Merchants' Bank appeals, and from part of the judgment, the defendant school district appeals, and plaintiff cross-appeals.

REVERSED and remanded, with directions.

---

[3] *Auerbach* v. *Salt Lake City,* 23 Utah, 103, 63 Pac. 907, 90 Am. St. Rep. 685.    *Fell* v. *Union Pac. Ry. Co.,* 32 Utah, 101, 88 Pac. 1003, 28 L. R. A. (N. S.) 1, 13 Ann. Cas. 1137.

Baker Lumber Co. v. A. A. Clark Co. et al., 53 Utah 336.

*Soule & Spalding* for appellants.

*Howat, Marshall, Macmillan & Nebeker, Barnes & Iverson, C. E. Norton* and *J. H. McDonald* for respondents.

GIDEON, J.

The facts out of which this controversy grew, as shown by the record and findings of the court, are as follows:

On or about July 5, 1913, defendant A. A. Clark Company entered into a written contract with Sevier school district of Sevier County, Utah, to construct a high school building at an agreed price of $44,282, at Richfield, in said county. Within a few days after the date of the contract the A. A. Clark Company assigned to the Merchants' Bank in writing all sums of money that might become due to it from time to time under, and by virtue of said contract, and at the same time, issued and delivered to the bank a written order authorizing the school district to pay the said bank all moneys to become due to Clark Company on account of the erection of said building. The school district, however, was not notified of such assignment until after the delivery of the final warrants in January, 1914. During the construction of the building the plaintiff lumber company furnished certain materials for use and which were used in the construction of the building. The defendant Price, and certain other defendants, furnished materials and performed labor in the erection of the building. On or about January 17, 1914, Clark Company, through its representative, A. A. Clark, went to the officers of said district and represented that the building was substantially completed, and, after an examination by the board of education and the architect, and it being ascertained that the building was not completed, but was thought to be substantially so as represented by said A. A. Clark, the board of education accepted said building upon the promise and assurance of said Clark Company that it would continue its work on the building and complete the same according to plans and specifications. It was also determined at that meeting that there was then unpaid as part of the con-

tract price and for extra work a balance of $9,060. In pursuance of said agreement, and upon the promise of the said Clark Company to complete the building, the board of education authorized the issuance to the A. A. Clark Company of three warrants, one for $1,560, payable on demand, and the other two, one for $5,000 and one for $2,650, each due and payable one year after date and bearing interest at the rate of 6 per cent. per annum. It further appears that immediately thereafter the said Clark Company indorsed and delivered to the Merchants' Bank the said school warrants, and received as consideration therefor credit upon an open account then overdrawn largely in excess of the amount of the warrants; that the Clark Company failed to complete the building according to its promise, and thereafter, after notice, the board of education caused the building to be completed, at an expense of $1,041.96. It also appears that at the meeting on January 17, 1914, the manager of the Clark Company represented that all of the bills for materials used and work done upon said building had been paid except a few small items, and that those small accounts would be paid from the proceeds of the warrants that day delivered to him. Thereafter, in the month of April, 1914, prior to the institution of this action, the A. A. Clark Company was adjudged an involuntary bankrupt, and the defendant J. W. Edmunds was named trustee of the estate. It also appears that the representations made to the board of education respecting the outstanding indebtedness for materials and labor used in the building were not true, and that there were unpaid and outstanding accounts of between $5,000 and $6,000; that the plaintiff company had furnished materials used in the construction of the building of the approximated value of $2,800, and the same remained unpaid. The plaintiff, in the month of December, 1914, instituted this action in Salt Lake County against the Clark Company, the trustee of the estate, the Merchants' Bank, the school district, and other defendants named, all of which last-mentioned defendants had claims against the Clark Company either for labor performed or materials used in the construction of said building. The complaint stated the contract between plaintiff and the Clark

Company for furnishing materials used in the school building and the failure to pay for the same; also that some of the defendants stood in like relationship to the defendant Clark Company; that there was certain indebtedness unpaid from the school district to the Clark Company for the erection of such building, stating the amount upon information and belief; and that the defendant bank claimed an interest or lien of some nature in or upon the amount so due from said school district. The prayer of the complaint was that each of the several defendants having claims against the A. A. Clark Company be required to set forth the amounts of such claims and whether the claims were for labor performed or materials furnished and used in the construction of the building; that the defendant bank be required to set forth its interest in, claim to, or lien upon all of said moneys, and upon a determination of the several amounts due from the Clark Company that judgment be given against said fund for such amounts with interest from the dates the same became due; and that the plaintiff and others to whom the said A. A. Clark Company was indebted for materials or labor be adjudged to have a prior and superior claim to the said fund over that of the Merchants' Bank, and for general relief.

To that complaint the Merchants' Bank interposed a demurrer, and, among other grounds, alleged that the district court of Salt Lake County was without jurisdiction to entertain the action, and that the complaint failed to state sufficient facts to constitute a cause of action. The demurrer was overruled, and an answer was filed in which objection was still interposed to the jurisdiction of the court. The bank, in addition to the answer, filed a cross-complaint against its codefendant the Sevier school district and prayed for judgment for the amount of the warrants held by it.

The defendant Clark Company and the trustee in bankruptcy filed disclaimers to any interest in the fund, and they did not thereafter appear in the action.

The school district in its answer admitted the execution of the contract for the erection of the building, admitted issuing the warrants to the Clark Company, but alleged the same were so issued because and by reason of the false representations

of the agent or manager of the Clark Company that the school building was substantially completed, and also upon the further representation that all claims for materials or labor used in the construction of the building had been paid except as to a few small items which were to be paid out of the proceeds of the warrants so delivered, and also upon the further assurance of. the Clark Company that it would immediately complete the building according to agreement. It was further alleged in the answer that said Clark Company had not paid all claims for materials and labor used in the prosecution of the work; that upon receipt of the warrants it violated its agreement to complete the building, and that it was thereafter discovered that poor and inferior materials had been used, and not such materials as were specified in the contract, and the building was left in a defective condition; that the Clark Company. failed to complete the building after demand, and thereafter the school board procured the work to be done at its own expense and asks that an offset of the amount so expended be allowed and for additional damages by reason of the failure to use such materials as were designated in the contract. In its prayer the Sevier school district asked that the plaintiff's complaint and the various cross-complaints be dismissed and for general relief.

The other defendants holding claims against the Clark Company filed an answer, and by way of cross-complaint alleged the indebtedness of the defendant Clark Company to each defendant respectively for the amounts claimed for labor done or materials furnished in the construction of the building.

Upon the issues thus made the matter was tried before the court without a jury, and judgment entered allowing the off-set or counterclaim of the school district for the amount expended by it, to-wit, $1,041.69. Judgment was entered in favor of the plaintiff for the amount found due it for materials furnished, and also in favor of the several defendants claiming indebtedness from the Clark Company. It was decreed that such amounts should be paid out of the fund due the school district prior to any claim or right on the part of the Merchants' Bank, and that whatever remained of said fund, if any, should be paid to the said bank.

From that judgment the Merchants' Bank appeals. From the decree of the court allowing interest on the indebtedness due from the school district and from the refusal of the court to allow its costs the school district appeals. Plaintiff cross-appeals, and assigns as error the refusal of the court to allow an item of $75 to which it claims it was entitled.

It is conceded that the right of the plaintiff to maintain this action, if at all, is by reason of the provisions of Comp. Laws Utah 1907, section 1400x. The provisions of that section, so far as material here, are as follows:

"Any person, partnership, or corporation who has done work or labor or furnished materials to any principal contractor for the construction or repair of any public work of any character for any county, town, city, village, or school district, may maintain an action therefor in the county in which such work, labor, or materials were done or furnished, against such principal contractor and such county, town, city, village, or school district, jointly, for the recovery thereof; but no judgment shall be rendered against any defendant therein, other than such principal contractor, for any amount greater than the amount due from it to such principal contractor at the time of the commencement of such action."

The entire section will be found in the opinion of this court in *South High School Dist.* v. *McMillan P. & S. Co.*, 49 Utah, 477, 164 Pac. 1041, to which reference is hereby made.

It is contended on the part of the appellant bank that the district court of Salt Lake County had no jurisdiction or authority to entertain this proceeding, and that it was incumbent upon the plaintiff, in order to take advantage of the provisions of that section, to file its action in the county where the school district is located; that the lien or claim given to the person or corporation furnishing materials to be used in a public building exists only by the provisions of that section, and to obtain the benefit of the same it was necessary to strictly follow its provisions, and that any failure to do so would deprive the claimant of the right attempted to be given by the statute. The error of that contention is that the right for preferential payment to the persons mentioned existed, and was intended to exist, indepen-

dently of the method or procedure of enforcing such right.
It is not contended that the district court of Salt Lake County,
being a court of general jurisdiction, would not have had
jurisdiction of the subject-matter except for the provisions of
the statute requiring the action to be instituted in the county
in which such work was done or materials furnished.  The
right existed independently of the method or procedure of
enforcing it, and, the district court of Salt Lake County being
a court of general jurisdiction, the parties could, by volun-
tarily appearing in the action, submit themselves to the juris-
diction of that or any other district court in the state.  The
statute provides a method by which any action not instituted
in the proper county may be changed to the county where the
action should have been instituted.  Chapter 55, Laws Utah
1913, which is amendatory of Comp. Laws Utah 1907, section
2934, provides that a change of venue may be had on motion,
first, when the county designated in the complaint is not the
proper county.  Comp. Laws Utah 1907, section 2933, as
amended by chapter 93, Laws Utah 1913, also provides that, if
an action is commenced not in the proper county for trial, the
same may, "notwithstanding, be tried therein unless the de-
fendant, at the time he appears and answers or demurs, files
an affidavit of merits and demands, in writing, that the trial
be had in the proper county."  Even conceding that the de-
fendant bank, as the assignee of the claim of the principal
contractor, had the right to object to the jurisdiction of the
district court of Salt Lake County to try the action, it had its
remedy by motion or demand for a change of trial, and the
action could have been certified and sent to the proper county.
No such motion or demand was made by the bank.  It there-
by waived any right it may have had to object to the dis-
trict court of Salt Lake County entertaining jurisdiction of
the action.  That contention must be overruled.  *Emerson-
Brantingham Imp. Co.* v. *Giles,* 53 Utah, 539, 174 Pac. 181.

It is further contended on the part of appellant bank that
the execution and delivery of the warrants by the school dis-
trict was a payment of any indebtedness it owed to the de-
fendant Clark Company, and that by reason of such payment
the school district was not thereafter liable to hold or retain

any money for the benefit of the parties who furnished materials or performed labor, and that the assignment and delivery of the warrants to the bank vested the title in said bank, and thereafter the warrants were not subject to any offset or defense by any one save and except the school district; that neither the plaintiff nor the other claimants could claim any lien against the school building; and that therefore the school district was under no obligation or duty to protect such claims. It has been determined by this court that an assignee of any amounts due from a public corporation to a contractor for the construction of a public building does not give the assignee any right over the claims of materialmen or laborers who furnish materials or perform work in the construction of such building, but, on the contrary, that the claim or right of such assignee is inferior and subject to the rights and claims or liens of materialmen or laborers. *South High School Dist.* v. *McMillan P. & S. Co.*, supra. The question presented for determination on this appeal is: Does the issuance and delivery of the warrants, as herein stated, give to the assignee or holder of such warrants a claim or right superior to the claims of materialmen or those performing labor on a public building? It was pointed out by this court in the case last above cited that by the provisions of the statute materialmen and laborers, whether they had liens or not, had preferential rights or claims to the moneys unpaid by the public corporation, and that upon the institution of proceedings as provided in section 1400x, supra, it was the duty of the public corporation to see that the amounts so due were applied in the payment of such claims, and that it could only be relieved from that duty by the actual payment prior to the institution of such action, and that the assignee of the amount due the contractor could not successfully interpose his claim against such preferential claimants. Public buildings not being subject to liens for labor and materials used in their construction, the reason for, and the object sought by, the enactment of section 1400x, supra, was to give such laborers and materialmen a right which they could enforce against the public corporation so long as any part of the contract price for such building remains unpaid. The preferential right to

receive payment of the amounts due from the contractor given by the statute was to protect the classes mentioned therein, and was intended as a substantial right, and ought not be defeated by any juggling of the contractor so long as the public body owes any part of the contract price. There can therefore be no question in this action but that, if the warrants were held by the defendant Clark Company, and an effort was made to enforce payment, it was not only the right, but the duty, of the school district to defend such action and see that the amount unpaid was applied in payment of the materialmen and laborers holding such preferential claims. That a warrant issued by a public corporation is subject to all defenses, even in the hands of a bona fide purchaser for value, that exist in the public corporation against the original holder or payee of such warrant, is supported by the weight of authority. The rule respecting defenses against such warrants is stated in *Watson* v. *City of Huron*, 97 Fed. 449, 38 C. C. A. 264, and is quoted with approval in *Hornblower* v. *City of Pierre* (D. C.) 231 Fed. p. 502, as follows:

"Such instruments are not subject to the rules of the law merchant or in any manner to be treated like negotiable bonds. Whatever difference of opinion may have existed among the courts fifty years ago as to the negotiability of such warrants, the courts are now unanimous that, while such warrants establish prima facie the validity of the claims allowed and authorize their payment, they have no other effect; that they are in form negotiable, and transferable by delivery, so far as to authorize the holder to maintain in his own name an action on them, but they are not negotiable instruments, in the sense of a law merchant, so that, when held by a bona fide purchaser, evidence of their invalidity or defenses available against the original payee would be excluded."

This rule is also stated in the following language in the first headnote to the case of *Clatskanie State Bank* v. *City of Rainer*, 72 Or. 243, 143 Pac. 909:

"City warrants are not negotiable instruments in the sense applied to unmatured commercial paper; and, while they are prima facie valid, yet as against any holder they are subject to all defenses, the same as any open account or nonnegotiable paper."

See, also, *Merrill* v. *Monticello*, 138 U. S. 673, 11 Sup. Ct. 441, 34 L. Ed. 1069.

It must therefore be held that the bank, by the assignment and delivery of these warrants, was in no better position to enforce payment than the original payee, and that they were subject to the same defense as existed against such original payee; that, by reason of the preferential right given to the plaintiff and the other claimants against the Clark Company, the court did not err in its judgment decreeing that such claimants should be paid in preference to the appellant bank.

Appellant also assigns as error the finding that the claims of J. W. Ellison and J. A. Strong should be included in the judgment against the fund. It appears that these defendants had filed proof of their respective claims in the bankrupt estate as unsecured debts and had received two dividends from the trustee of that estate prior to appearing in this action. It is insisted that the act of so proving their respective claims in the bankruptcy proceedings without reserving the right or privilege of enforcing such claims against any security held or to which they were entitled was a waiver against such security and constituted an election to pursue their remedy in the bankruptcy proceedings alone. A secured creditor, under the provisions of the congressional Bankruptcy Act of July 1, 1898 (30 Stat. 544, c. 541 [U. S. Comp. St. sections 9585-9656]), has been defined by the Circuit Court of Appeals for the Fourth District as follows:

"Under the Bankruptcy Law a creditor, to be 'secured,' must either hold security against the property of the bankrupt, or be secured by the individual obligation of another who holds such security." *Gorman* v. *Wright,* 136 Fed. 165, 69 C. C. A. 76.

It will be remembered that A. A. Clark Company had assigned all amounts coming to it from the school district to appellant bank shortly before entering into the contract with the school district, and had carried that assignment into effect by delivering the warrants to the bank. It will thus be seen that at the time of the adjudication in bankruptcy the Clark Company did not own or have any interest in the fund owing by the school district. The defendants Ellison and

Strong did not therefore, at the date of such adjudication, hold any security or claim against the property of the bankrupt. Neither were they secured by the obligation of any one holding such security. They were not secured creditors within the definition quoted, and it was not error to allow judgment against the fund in. question for the amount due these claimants. *Gorman* v. *Wright,* supra; *In re Thompson* (D. C.) 208 Fed. 207; *Swarts* v. *Fourth Nat. Bank,* 117 Fed. 1, 5, 54 C. C. A. 387; *In re Headley* (D. C.) 97 Fed. 765.

Some objection is made that a claim for $840 included in the judgment of plaintiff was not a claim for labor or materials, and was therefore not within the provisions of the statute. The amount was due for the contract price of the roofing of the building. It seems that the contract for this particular work had been let to the Berrum Agency, a concern engaged in selling roofing, located at Salt Lake City. Immediately after the Berrum Agency began the work some subsequent arrangement was had by which the plaintiff company did this work, and an order was given by the Berrum Agency to the Clark Company directing it to pay the agreed price to the Baker Lumber Company, plaintiff. The work was completed by the Baker Lumber Company, and the price has not been paid. The court did not err in allowing plaintiff judgment for this amount.

Complaint is also made by the appellant of the rulings of the district court in refusing to allow interest at the legal rate on the amount due from the school district. That assignment will be determined in considering the appeal of the school district.

The plaintiff on its cross-appeal has assigned as error the refusal of the court to include in the amount of its judgment an item of $75. It appears from the findings of the court that this $75 was money advanced or paid by the plaintiff company to some workmen who had been employed by the Berrum Agency to lay the roofing on the building and who refused to proceed with the work unless their wages were paid; that upon such refusal the plaintiff lumber company informed the Clark Company of the intention of the men, and the Clark Company then directed the Baker

Lumber Company to pay the $75 to the men and to proceed and finish the laying of the roof with the materials furnished. The plaintiff company thereupon paid the men, and it now insists that it is entitled to have the same allowed as money expended for labor in the construction of the building. In our judgment the claim should have been allowed and included in the judgment of plaintiff.

The defendant school district appeals, and assigns as error: First, the refusal of the court to allow that district costs incurred in establishing its allegations relative to its set-off or counterclaim; second, that the district court erred in allowing any interest, at the rate of five per cent. or any other rate, upon the amount found to be due. It 6 is contended by the school district that under the provisions of Comp. Laws Utah 1907, section 3339, it is entitled to its costs as a matter of right; that its claim of set-off or counterclaim should be treated as an independent action so far as the costs are concerned. If the defendant school district had paid into court the amount above what it claimed as a set-off against the face of the warrants, there might be much force to its contention. That it did not do, but, on the contrary, by its answer denied any liability, and prayed judgment that the plaintiff's complaint and the various cross-complaints filed against it in that action be dismissed. Under all of the facts and circumstances surrounding this litigation and a consideration of the various parties interested, this court would not be justified in holding it error on the part of the district court to refuse any of the parties costs in the action.

Passing now to a consideration of the contention of the school district that the court erred in allowing interest at the rate of five per cent. on the amount due from the school district after deducting the sums expended by it in completing the building: It appears that at the conditional acceptance of the building at the meeting between the representative of the Clark Company and the members of the school board in January, 1914, the real amount remaining unpaid on the contract was $9,060; that the school district had on hand only the sum of $1,560 to meet this indebtedness; that it was agreed between the parties that a warrant should be given for that amount

payable at once; and that the balance, namely, $7,500, should bear interest at eight per cent. per annum and become due and payable in one year.  It was further agreed, for some reason not satisfactorily explained in the record, that the warrants should be drawn for this unpaid balance to bear only six per cent. interest per annum, and accordingly two per cent. of the amount, or $150, was added to the amount unpaid, and two warrants were issued, one for $5,000, and one for $2,650, each payable in one year and bearing interest at six per cent. per annum.  The district court directed that the $150 be credited on the face of the warrants, and the sum expended by the school board for the completion of the building be deducted from the $7,500, and that interest at five per cent. per annum be allowed on such balance.  It is the contention of the school board that no interest should have been allowed, while, on the other hand, it is contended by the appellant bank that the school board was authorized to enter into the arrangement or agreement it did to pay eight per cent., the legal rate of interest.  That the defendant school district was authorized to enter into the contract for the construction of the building is not questioned by any one.  That it had the legal right or authority to contract to pay the agreed price on a day certain or upon completion of the building is not disputed.  There is no express provision in the statutes of this state authorizing school boards or other public corporations to issue interest-bearing warrants. There is a provision relating to interest on school bonds issued after authority obtained from the qualified electors of the several school districts, and the rate of interest for such indebtedness is that the bonds so issued shall bear interest not exceeding five per cent. per annum, payable annually or semiannually.  Manifestly that provision of the statute does not relate to and does not govern where the facts are as in this case.  It is further contended that the great weight of authority, in the absence of express statutory provisions, is that warrants issued by public corporations do not bear interest.  It is also contended that that question has been determined by this court in *Daggett* v. *Lynch,* 18 Utah, 49, 54 Pac. 1095.  The facts determined in that action are not similar to the facts here and are not controlling.  Neither are the conclusions here

reached in conflict with the decision in that case. The distinction between the facts as they appear in that action and a like state of facts as we have in this proceeding is pointed out by this court in a case subsequent to the Daggett Case involving a like state of facts in that case. *McIntosh* v. *Salt Lake County,* 23 Utah, 504, 65 Pac. 483.

The provisions of Comp. Laws Utah 1907, section 1241, respecting the rate of interest are as follows:

"The legal rate of interest upon the loan or forbearance of any money, goods, or things in action shall be eight per cent. per annum. But nothing herein contained shall be so construed so as to in any way affect any contract or obligation made before the taking effect of this title."

In this action, as indicated, the debt was due at the time the building was accepted. The school board was authorized to contract to pay the debt at that date. We are unable to understand why a public corporation should not be required to meet its obligations the same as any other body authorized to contract debts, and upon a failure to make payment at the time agreed why it should not be required to pay interest for any forbearance as an individual. Moreover, this court has recognized that a public corporation, where it had received the benefit of goods, should pay the legal rate from the date it received the benefit of its contract. *Auerbach* v. *Salt Lake City,* 23 Utah, 103, 63 Pac. 907, 90 Am. St. Rep. 685. In that action the district court after ascertaining the amount due from Salt Lake City for the value of the goods received by it, decreed that it should pay interest at the legal rate from the date that it received such goods. On appeal to this court that judgment was affirmed. That ought to be conclusive of this case. It is not a question of the school board agreeing to pay interest either by warrant or otherwise. It is a question of its duty on one side and the right of the creditor on the other. It is a right that the statute gives to any one who has money due and who is unable to collect the same. The school board in this case accepted the building. Presumably it had the use of it for the purpose for which it was erected and has continued to use it since its acceptance. Public policy, it seems to us, should require a public corporation to meet its

obligations legally authorized whenever due, and upon failure to do so that it be subjected to the same duty as private individuals—to reimburse the creditor for his forbearance or delay in receiving what is his due. If it be admitted, as stated in some of the authorities, that interest on county warrants should not be allowed for the reason that "in the greater number of cases the probability of delay or uncertainty in the time of payment is known beforehand and is estimated in the enhanced prices charged for the services, work, or material contracted for," then any basis upon which public work could be contracted would indeed be uncertain, and of necessity the result of such uncertainty in the date of payment would be that no contractor would feel justified in undertaking to contract for the erection of a public building without fixing a much greater price than he otherwise would if he had some assurance that upon failure to meet payments as specified he would be allowed interest for the use of whatever had been invested in the construction of such building. Public policy does not demand or justify such a construction, but, on the other hand, requires that public corporations, under facts such as appear in this record, meet their obligations as private individuals are required to do, and, upon failure so to do, that they be required to pay such damages or interest as an individual would be required to pay. The amount expended, and required to be expended, in completing the building for the school district, was a definite sum, and of necessity there was no uncertainty in the balance unpaid. *Fell* v. *Union Pac. Ry. Co.*, 32 Utah, 101, 88 Pac. 1003, 28 L. R. A. (N. S.) 1, 13 Ann. Cas. 1137.

It follows that the court erred in its refusal to compel the school district to pay interest at the legal rate on the amount less the set-off from the date due until paid.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Salt Lake county, with directions to that court to correct its findings and conclusions and enter judgment in accordance with the views herein expressed.

Neither party will recover costs on this appeal.

CORFMAN, C. J., and FRICK, WEBER, and THURMAN, JJ., concur.